IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN LEE VANDEWALKER,<br><br>Defendant. | Case No. CR13-2010<br><br>ORDER FOR PRETRIAL DETENTION |

On the 6th day of June, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial.[1] The Government was represented by Assistant United States Attorney Anthony Morfitt. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On April 19, 2013, Defendant Steven Lee Vandewalker was charged by Indictment (docket number 2) with two counts of bank robbery (Counts 1 and 2) and one count of being a felon in possession of a firearm (Count 3). On May 23, 2013, Defendant was charged by Superseding Indictment (docket number 19) with two counts of bank robbery (Counts 1 and 2), being a prohibited person in possession of a firearm (Count 3), and unlawful receipt of a firearm by a person under indictment for a felony offense (Count 4). At the arraignment on April 29, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on July 1, 2013. At Defendant's request,

---

[1] Defendant waived his right to a hearing at the initial appearance, while reserving his right to ask for a hearing on a later date.

1

trial was rescheduled on August 26, 2013. Due to a conflict in the Court's schedule, trial was moved up one week — to August 19, 2013.

At the hearing, FBI Special Agent Scott Gray testified regarding the circumstances underlying the instant charges. On September 11, 2012, at 10:35 a.m., an individual wearing a light colored T-shirt, blue jeans, dark baseball cap, grey gloves, sunglasses, tennis shoes with white markings, and carrying a black pistol, entered the Farmers Saving Bank in Aurora, Iowa, and demanded money from a bank teller. The teller complied with the individual's request. The individual left the bank with $11,600 cash. A witness observed a silver Chevy Impala speed off from an intersection near the bank. At the time of the robbery, a 2008 silver Chevy Impala was registered to Defendant's wife. On the afternoon of September 11, the 2008 Impala was turned over to a towing company.

On October 23, 2012, at 12:04 p.m., an individual entered the Farmers Savings Bank in Frederika, Iowa, with a black pistol in his hand. Two employees and one customer were in the bank when the individual entered. The customer was in an office with one of the bank employees, and when he went to the office door to see what was happening, the individual with the pistol "clubbed" the customer in the face. The blow to the face fractured the customer's orbital bone and caused a laceration requiring multiple stitches. Following the altercation with the customer, the individual went behind the counter and demanded money from the teller. After getting the money from behind the counter, the individual and teller went into the bank vault for more money. The individual exited the bank with $36,909 in cash. A witness saw the individual get into a silver SUV. Another witness saw a smaller silver Cadillac SUV leaving Frederika shortly after the robbery. Defendant's wife owned a silver Cadillac SRX matching the vehicle observed by the witnesses. The vehicle was purchased in September 2012. A cash payment was made on the Cadillac on the same day as the robbery.

On October 24, 2012, the morning following the Frederika robbery, clothing was found littered on Kildeer Avenue near Frederika, just a few miles from the bank. The clothes consisted of blue jeans, tennis shoes, a black baseball cap, grey gloves, and a black hooded sweatshirt.[2] The sweatshirt had R&M Metals written on it. Law enforcement later learned that Defendant was a past employee of R&M Metals in Waterloo, Iowa. Special Agent Gray testified that the clothing found on Kildeer Avenue was consistent with the clothing worn by the individual who robbed the bank in Frederika.

On October 26, 2012, a search warrant was executed at Defendant's residence. A silver Cadillac SRX was parked in Defendant's driveway. A stainless steel 9 mm pistol was found inside Defendant's residence.[3] Defendant's former brother-in-law told law enforcement that he sold Defendant a pistol earlier that week. A second pistol was found in a vehicle outside the residence.[4] Officers also found three sets of cash inside Defendant's residence. Defendant had $480 cash in his wallet. Defendant's wife had $700 cash in her purse. Cash in the amount of $26,000 was found in a black plastic box located in the bottom of a built-in cabinet in an upstairs bedroom. All of the cash was in $20 bills. The $26,000 cash was in 13 bundles with paper straps that had First National Bank written on the straps. Law enforcement confirmed that Farmers Savings Bank in Frederika obtained its cash from First National Bank in Waverly, Iowa. Numbers and initials on the straps showed that the cash was delivered to the Frederika bank on October 18, 2012, five days before the robbery.

---

[2] Special Agent Gray testified that the grey gloves and black baseball cap were consistent with the gloves and cap worn by the individual involved in the Aurora bank robbery. Specifically, the baseball cap had the same markings as the cap worn by the individual at the Aurora bank robbery, except that the symbol was blacked out with a marker.

[3] The pistol did not match the one used in the robberies.

[4] The second pistol belonged to an individual living in Defendant's basement.

Law enforcement also took a DNA buccal swab from Defendant. Defendant's DNA was checked against the clothing found on Kildeer Avenue in Frederika. Lab tests showed "strong matches" between the left glove and black sweatshirt and Defendant's DNA.

According to the pretrial services report, Defendant is 38 years old. He was born in Oelwein, Iowa, and has lived his entire life in Oelwein and Waterloo. Defendant has been married to his current spouse since July 2012. They have a five week old baby together. Defendant was previously married to Heather Vandewalker from 2000 to 2007. They have two children together. Both children reside with their mother in Oelwein.

Defendant told the pretrial services officer that he was self-employed as a bricklayer. From 2009 to 2012, Defendant worked at Todd's Specialized Rigging in Oelwein. Defendant is in good physical health. He reported no problems with mental or emotional health. Defendant admitted difficulties with alcohol abuse in the past, but told the pretrial services officer that he had not abused alcohol in the past five years. He admitted smoking marijuana 20 years ago. He also admitted using methamphetamine one time, about eight months ago. Defendant reported that he underwent substance abuse treatment while incarcerated in 1997.

Defendant has an extensive criminal record. In June 1990, at age 16, Defendant was adjudicated delinquent and placed at the Iowa Training School. He was paroled in December 1990. On January 27, 1994, at age 19, Defendant was charged and later convicted of forgery. On February 3, 1994, Defendant was again charged and later convicted of forgery. According to the pretrial services report, Defendant was sentenced on the second forgery on February 10, 1994, seven days after he was arrested. He was given a suspended 5-year prison sentence and 5 years probation. On March 29, 1994, while in the United States Army, Defendant was charged and later convicted of larceny, forgery, and making, using, and/or possessing a false identification card, in Baltimore, Maryland. He was sentenced to 30 months in prison, and was dishonorably discharged

4

from the Army. In January 1995, Defendant was placed on absconder status in the February 1994 forgery case. On June 22, 1996, while the January 1994 forgery charge remained pending, and while Defendant was on probation in the February 1994 forgery charge, Defendant was charged and later convicted of forgery for a fourth time. In July 1996, he was sentenced to 5 years in prison on both the January 1994 and June 1996 forgery charges. Additionally, his probation in the February 1994 forgery charge was revoked. In February 1998, Defendant was placed on work release. However, in September 1998, he was returned to prison. In March 1999, Defendant was again placed on work release. His sentences were discharged on June 6, 1999.

On January 7, 2000, Defendant was charged and later convicted of fifth degree theft. On January 26, 2000, while the theft charge was pending, Defendant was again charged and later convicted of fifth degree theft. On September 26, 2000, Defendant was charged and later convicted of forgery, habitual offender. He was given a 15-year suspended prison sentence and 5 years probation. On September 27, 2000, while the forgery charge was pending, Defendant was charged with fifth degree theft. That case was ultimately dismissed. On February 4, 2001, while charges were pending, Defendant was charged and later convicted of fifth degree criminal mischief. Defendant failed to appear for his pretrial conference. An arrest warrant was issued, but later cancelled.

Between January 30, 2004 and April 29, 2004, Defendant was arrested five times for fifth degree theft, and one time for fourth degree theft. He was on probation and/or pretrial release when all of these arrests occurred. He was convicted on all charges, except for two of the fifth degree theft charges that were ultimately dismissed. Additionally, Defendant failed to appear for court proceedings on five different occasions on these charges. On June 15, 2004, a violation of probation petition was filed in his 2000 forgery case, and an arrest warrant was issued. On June 22, Defendant was placed on

absconder status. The warrant was served on July 1, 2004, and Defendant was held in jail. On July 13, his probation was modified to include 1-year in a residential facility.

Between July 28, 2004 and December 15, 2004, Defendant was charged seven times with fifth degree theft, one time with fifth degree criminal mischief, and one time with third degree theft. All of these charges occurred while Defendant was on probation and other charges were pending. Defendant was convicted in all of these cases, except for two of the fifth degree theft charges, which were eventually dismissed. Defendant also failed to appear for court proceedings eight times in these cases. On December 14, 2004, Defendant was placed on escape status in the 2000 forgery case, and an arrest warrant was issued. A violation of probation petition was also filed in that case. Additionally, Defendant was placed on escape status while on pretrial release in the September 2004 third degree theft case, and an arrest warrant was issued after he failed to appear for sentencing in that case. The warrants were served and Defendant was held in jail. He was given a 2-year suspended prison sentence and 2-5 years probation on the third degree theft charge. On April 6, 2005, his probation was revoked in the 2000 forgery charge. He was sentenced to 15 years in prison on that charge. He was paroled in April 2006.

On February 13, 2009, while on parole and probation, Defendant was charged and later convicted with failure to have a valid driver's license. Defendant failed to appear for a court proceeding in that matter. On June 12, 2010, while on parole and probation, Defendant was charged and later convicted of interference with official acts. Again, Defendant failed to appear for a court proceeding in that matter. On November 2, 2011, Defendant's 2000 forgery sentence was discharged. On August 11, 2012, while the 2010 interference with official acts charge remained pending, Defendant was charged with second degree theft. A plea hearing is scheduled on that charge in state court.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial

officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with two counts of bank robbery, being a prohibited person in possession of a firearm, and unlawful receipt of a firearm by a person under indictment for a felony offense. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(A) and (E).

Regarding the second step, the weight of the evidence against Defendant is strong. Vehicles registered to Defendant's wife were observed at both bank robbery locations. On

the morning following the Frederika robbery, clothes were found discarded near the bank that matched the clothing worn by the robber. Lab results showed that DNA from Defendant and two articles of the discovered clothing were "strong matches." A large sum of cash, all in $20 bills, was found at Defendant's residence. Paper straps on the cash contained numbers, initials, and writing indicating that the money came from First National Bank in Waverly, Iowa. Based on this information, law enforcement learned that the cash was delivered by First National Bank to the Frederika bank five days prior to the robbery.

Defendant had charges pending when the instant offense allegedly occurred. Defendant has a history of committing additional offenses while on pretrial release, probation, and parole. Defendant also has a history of failing to appear for court proceedings. The Court believes that the circumstances underlying the robberies show Defendant constitutes a danger to the community. In particular, the evidence suggests Defendant went to both banks armed with a pistol. At the Frederika robbery, the robber used the pistol to hit a bank customer in the face, resulting in serious injuries. A firearm not used in the robberies was also discovered at Defendant's home. As a convicted felon, Defendant is not allowed to possess a firearm. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released, to assure his appearance in court, or assure the safety of the community. Therefore, based on the serious nature and circumstances of the offenses, Defendant's prior criminal record and history of committing additional criminal offenses while on pretrial release, probation, and parole, and his history of failing to appear at court proceedings, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions

will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the request for detention hearing (June 4, 2013) to the filing of this Ruling (June 7, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 7th day of June, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA